# IN THE SUPREME COURT OF IOWA

No. 16–1544

Filed April 12, 2019

**MICHAEL JEFFERSON,**

Plaintiff,

vs.

**IOWA DISTRICT COURT FOR SCOTT COUNTY,**

Defendant.

On review from the Iowa Court of Appeals.

Certiorari to the Iowa District Court for Scott County, Marlita A. Greve, Judge.

The plaintiff seeks further review of a court of appeals decision upholding the district court denial of his motion to correct an illegal sentence and his application for appointment of counsel. **DECISION OF COURT OF APPEALS VACATED; WRIT SUSTAINED.**

Les M. Blair III (until withdrawal) of Blair & Fitzsimmons, P.C., Dubuque, then Stuart G. Hoover of Blair & Fitzsimmons, P.C., Dubuque, for plaintiff.

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, and Michael J. Walton, County Attorney, for defendant.

**CHRISTENSEN, Justice.**

A defendant filed a motion to correct an illegal sentence. He applied for appointment of counsel. The district court not only denied appointment of counsel, but also summarily dismissed his motion. The defendant filed a petition for writ of certiorari. The court of appeals annulled the writ. On further review, we find Iowa Rule of Criminal Procedure 2.28(1) requires the court to appoint counsel when an indigent defendant files a motion to correct illegal sentence under Iowa Rule of Criminal Procedure 2.24(1). Therefore, we sustain the writ and remand the case for appointment of counsel.

#### I. Background Facts and Proceedings.

In 2007, Michael Jefferson, then twenty-one years old, engaged in nonconsensual sexual contact with a fourteen-year-old female in a Davenport motel alongside another adult male, Arnold Grice. Jefferson forced the victim to have sexual intercourse with him against her will by placing his penis into her vagina while Grice forced his penis into the victim's mouth. During this time, the victim was under the influence of cocaine and alcohol. The victim later identified Grice from a photographic line-up, and Grice's girlfriend implicated Jefferson based on admissions made to her. Upon further investigation, law enforcement was able to lift Jefferson's fingerprints from a condom wrapper found in the motel room. Consequently, the state charged Jefferson with sexual abuse in the second degree in violation of Iowa Code section 709.3 (2007), a class "B" felony, and sexual abuse in the third degree in violation of Iowa Code section 709.4(2)(c)(4), a class "C" felony.

Jefferson entered into a plea agreement in which he pled guilty to third-degree sexual abuse based on his sexual assault of a fourteen-year-old while he was twenty-one years old. As part of the plea agreement,

Jefferson agreed to testify against Grice, and the state agreed to dismiss the charge of second-degree sexual abuse against Jefferson, file no additional charges, and make no sentencing recommendation. In conditionally accepting Jefferson's guilty plea, the district court found that there was a factual basis to support this plea and that Jefferson entered into the plea knowingly and voluntarily.

Jefferson subsequently filed a timely motion in arrest of judgment seeking permission to withdraw his guilty plea based on his alleged innocence, fear of further prosecution due to his inadequate testimony against Grice, and his belief that the district court failed to properly inform him of the duration he would spend on the sex offender registry. The district court denied Jefferson's motion. The court of appeals affirmed Jefferson's conviction but vacated his sentence and remanded for resentencing based on the state's unauthorized sentencing recommendation in breach of the plea agreement. Jefferson later unsuccessfully raised similar claims in a postconviction-relief action.

The district court sentenced Jefferson to an indefinite term of imprisonment not to exceed ten years and ordered his placement on the sex offender registry for third-degree sexual abuse in violation of Iowa Code section 709.4. The district court also imposed a special lifetime sentence pursuant to Iowa Code section 903B.1, committing Jefferson into the custody of the director of the Iowa Department of Corrections with parole eligibility as set forth in chapter 906. Approximately two years after Jefferson was discharged from prison, the board of parole filed a notice of parole violation claiming Jefferson violated three conditions of parole. The violations alleged Jefferson provided false information to the sex offender registry, thereby failing to obey all laws and ordinances, and Jefferson made verbal threats in a phone call to his former girlfriend. Following a

parole revocation hearing, a parole judge found the violations were correct, revoked Jefferson's parole, and ordered Jefferson be placed on the work release list or at the work release center in Davenport. Soon thereafter, another parole judge found Jefferson in violation of four parole conditions and ordered Jefferson to serve up to five years in prison.

Jefferson filed a motion for correction of an illegal sentence on May 19, 2016, challenging the discharge date for his special lifetime sentence under 903B.1 and claiming an ex post facto violation. The district court denied Jefferson's motion in its entirety, explaining Jefferson's offense required "the imposition of the special sentence of lifetime parole pursuant to Iowa Code [s]ection 903B.1 . . . [and] this court has no control or authority over when Defendant is to be released or when his parole should end." Jefferson filed a second motion for correction of an illegal sentence on August 9, 2016, maintaining his lifetime special sentence was unconstitutionally vague and the result of an illegal bill of attainder in violation of the United States and Iowa Constitutions. Moreover, Jefferson's second motion claimed the lifetime special sentence violated equal protection; the separation of powers doctrine; his constitutional rights to freedom of association, to marry and have children, to be free from bodily restraint, and to travel; as well as his right against self-incrimination under the Fifth Amendment of the United States Constitution. Jefferson also filed an application for appointment of counsel on August 9, 2016.

The district court denied Jefferson's second motion for correction of an illegal sentence "for all the same reasons" the district court denied his first motion for correction of an illegal sentence. The district court also denied Jefferson's motion to have counsel appointed. Prior to receiving this denial, Jefferson mailed a motion to amend original filing of correction

of sentence that raised additional constitutional violations, including a claim that his special lifetime sentence violated the prohibition against cruel and unusual punishment under the United States and Iowa Constitutions. The district court denied this motion, noting it was "denied for all of the same reasons the previous two motions were denied."

Jefferson filed a petition for writ of certiorari followed by a notice of appeal from the district court's denial of his second motion to correct an illegal sentence "and from all adverse rulings and orders inhering therein." We denied Jefferson's petition for writ of certiorari, noting he had a "related appeal still pending before this court . . . in which" he had appointed counsel to represent him.

We then determined Jefferson was not entitled to an appeal as a matter of right from a denial of a motion to correct an illegal sentence. It was proper for Jefferson to seek permission to appeal by filing a petition for a writ of certiorari.

Jefferson filed a statement in support of granting certiorari review on July 27, 2017, reasoning review was warranted because our "guidance is necessary on the questions of whether and under what circumstances a defendant may be entitled to counsel, a hearing, and/or a statement of findings on a motion to correct illegal sentence." Jefferson proclaimed we also needed to provide guidance as to when a gross disproportionality cruel and unusual punishment claim involving a section 903B.1 special sentence "may lie, specifically including the question of whether the threshold inquiry is satisfied under the circumstances of the present case."

Pursuant to Iowa Rule of Appellate Procedure 6.108, we treated all of Jefferson's filings as a petition for a writ of certiorari. We graned certiorari review.

The court of appeals annulled the writ of certiorari. It determined Jefferson had no constitutional or statutory right to counsel in his challenge to his alleged illegal sentence because the right to counsel does not apply to "a collateral attack on the conviction that has been finalized long ago." Additionally, the court of appeals rejected Jefferson's claim that his sentence was cruel and unusual, noting Jefferson could not show an inference of gross disproportionality between the gravity of his offense and his challenged sentence. Jefferson sought further review, which we granted.

## II. Standard of Review.

We review questions of statutory interpretation for correction of errors at law. *State v. Coleman*, 907 N.W.2d 124, 134 (Iowa 2018). Moreover, "[w]e may review a challenge that a sentence is illegal at any time." *State v. Zarate*, 908 N.W.2d 831, 840 (Iowa 2018). Finally, "[t]hough we typically review challenges to illegal sentences for correction of legal errors, our standard of review for an allegation of an unconstitutional sentence is de novo." *State v. Harrison*, 914 N.W.2d 178, 187–88 (Iowa 2018).

## III. Analysis.

Jefferson presents a number of claims. First, he argues the district court violated his statutory right to counsel in denying his request for court-appointed counsel to represent him on his motion for correction of an illegal sentence. Next, Jefferson contends this denial of court-appointed counsel violated his constitutional right to counsel under both the Iowa and Federal Constitutions. Should we hold Jefferson does not have a federal constitutional right to counsel, Jefferson maintains the Iowa Constitution still provides him with a state constitutional right to counsel because the Iowa Constitution should be interpreted broader than the

United States Constitution. Similarly, he argues he has a right to counsel based on considerations of due process and fundamental fairness under the Iowa Constitution. Jefferson also claims the district court violated his procedural due process rights by summarily dismissing his motion for correction of an illegal sentence without providing him an evidentiary hearing or detailed findings. Finally, he asserts his lifetime special sentence under Iowa Code section 903B.1 constitutes cruel and unusual punishment under the State and Federal Constitutions.

**A. The Right to Counsel on a Motion to Correct Illegal Sentence.** Jefferson contends the district court violated his statutory right to counsel, as well as his constitutional right to counsel under the State and Federal Constitutions, in declining his request for appointed counsel to represent him on his motion to correct an illegal sentence. Additionally, he argues this denial of appointed counsel violates his due process rights as a matter of fundamental fairness under the State and Federal Constitutions. Jefferson asks us to hold that a motion to correct an illegal sentence is a stage of the criminal proceeding for which a right to counsel applies.

Iowa Rule of Criminal Procedure 2.28(1) provides,

> Every defendant who is an indigent person as defined in Iowa Code section 815.9 is entitled to have counsel appointed to represent the defendant at every stage of the proceedings from the defendant's initial appearance before the magistrate or the court through appeal, including probation revocation hearings, unless the defendant waives such appointment.

Iowa R. Crim. P. 2.28(1). Additionally, Iowa Code section 815.10 states,

> The court, for cause and upon its own motion or upon application by an indigent person or a public defender, shall appoint the state public defender's designee pursuant to section 13B.4 to represent an indigent person *at any stage*

*of the criminal*, postconviction, contempt, commitment under chapter 229A, termination under chapter 600A, detention under section 811.1A, competency under chapter 812, parole revocation if applicable under section 908.2A, or juvenile *proceedings* or on appeal of any criminal, postconviction, contempt, commitment under chapter 229A, termination under chapter 600A, detention under section 811.1A, competency under chapter 812, parole revocation under chapter 908, or juvenile action *in which the indigent person is entitled to legal assistance at public expense.* However, in juvenile cases, the court may directly appoint an existing nonprofit corporation established for and engaged in the provision of legal services for juveniles. An appointment shall not be made unless the person is determined to be indigent under section 815.9.

Iowa Code § 815.10(1)(*a*) (2016) (emphasis added).

In *State v. Alspach*, we read rule 2.28(1) (then rule 26(1)) and Iowa Code section 815.10(1) together and concluded that they provided a right to court-appointed counsel when a defendant is challenging restitution "imposed as part of the original sentencing order, or supplemental orders, under Iowa Code section 910.3," but not when a defendant is later bringing an action under section 910.7. 554 N.W.2d 882, 883–84 (Iowa 1996).[1] We noted in *Alspach* that the defendant would have had a statutory right to counsel had the restitution been finalized at sentencing and that he "should not be denied counsel simply because the amount of pecuniary damages was unavailable on the day of sentencing." *Id.* at 884. Nevertheless, we limited our holding "to challenges to restitution imposed as part of the original sentencing order, or supplemental orders." *Id.* In doing so, we maintained the defendant would "ordinarily have no right to appointed counsel" if he initiated a later action to modify the restitution

---

[1]We subsequently clarified in *State v. Blank* that a petition under Iowa Code section 910.7 filed within thirty days of a court's restitution order would be "considered an extension of the criminal proceedings." 570 N.W.2d 924, 926 (Iowa 1997). Hence, a right to counsel would attach. *See State v. Dudley*, 766 N.W.2d 606, 619 n.5 (Iowa 2009).

order because a later action would "not [be] part of the criminal proceedings." *Id.*

In *State v. Dudley,* 766 N.W.2d 606 (Iowa 2009), we recognized that Iowa Code section 815.10 is not self-contained. It provides a right to counsel "at any stage of the criminal . . . proceedings . . . in which the indigent defendant is entitled to legal assistance at public expense." *Id.* at 617 (quoting Iowa Code § 815.10(1) (2005)). Therefore, *Dudley* looked to other sources to determine when the defendant is "entitled to legal assistance at public expense." *Id.* at 617–18. In *Dudley*, we pointed out that the Iowa Constitution guarantees the right to counsel "in all criminal prosecutions," and that section 801.4(13) defines a "prosecution" as ending at "final judgment on behalf of the state." *Id.* at 617–18. Hence, in *Dudley*, we concluded "the legislature intended to extend the right to counsel enjoyed by a defendant charged with a criminal offense through the conclusion of the criminal proceeding by judgment." *Id.* at 618. However, we did not discuss rule 2.28(1) (or 26(1)) in *Dudley*, beyond noting that *Alspach* had relied on it. *Id.* at 619. Thus, we held that an acquitted defendant had a statutory right to counsel in a postacquittal proceeding for a judgment against him for the costs of his legal assistance as part of his defense since the judgment "was entered in the criminal proceeding, not in a separate action by the State." *Id.* "[B]y definition," the defendant's "criminal case did not end . . . until the cost judgment had been entered against [him] and in favor of the State." *Id.* at 620.

We must now decide in what category a motion to correct illegal sentence belongs. The text of Iowa Code section 815.10 does not answer the question; instead, it simply redirects us to whether this is a stage of the proceeding "in which the indigent person is entitled to legal assistance at public expense." Iowa Code § 815.10(1)(*a*) (2016). Rule 2.28(1),

meanwhile, is ambiguous. It states that the defendant has a right to counsel "at every stage of the proceedings . . . through appeal." Iowa R. Crim. P. 2.28(1). Does this mean that the right to counsel drops out once the defendant has been through his or her direct appeal? Or does it mean that as long as one is talking about a stage of the original criminal case, including any appeal within that original criminal case, the right to counsel remains?

In *Alspach* and *Dudley* we appear to have opted for the second of these two possible readings. That is, in *Alspach* we declined to find a right to counsel when the defendant files "a later action" under Iowa Code section 910.7, which is "civil in nature and not part of the criminal proceedings." 554 N.W.2d at 884. Yet in *Dudley* we found that there is a right to counsel when the state is seeking to collect costs of defense from an acquitted defendant because "[t]he State is not required to initiate a separate suit." 766 N.W.2d at 618. "This process takes place entirely in the context of the criminal case." *Id.*

A motion to correct illegal sentence is a stage of the original criminal case. It "takes place entirely in the context of [that case]." *Id.* Such a motion is not filed as a separate action. Indeed, rule 2.24(1) authorizes it as one of the "[p]ermissible motions after trial." It is true that such a motion may be filed at any time. *See* Iowa R. Crim. P. 2.24(5)(*a*). Still, it is not filed as a separate action but within the original criminal case. It is merely a "motion," not an "application," *see* Iowa Code § 822.3 (application for postconviction relief), or even a "petition," *see id.* § 910.7 (petition to modify plan of restitution or restitution plan of payment). Thus, we believe that under rule 2.28(1), *Alspach,* and *Dudley,* a right to counsel is triggered.

Furthermore, we believe this interpretation is supported by the principle that "we strive to avoid constitutional problems when we interpret our rules." *State v. Jones*, 817 N.W.2d 11, 17 (Iowa 2012). Needless to say, serious constitutional problems would be raised if the state could move to correct an indigent defendant's sentence and have that defendant sent to prison without the defendant having a right to counsel. Likewise, serious constitutional problems would be raised if an indigent defendant who sought a correction of his or her sentence in light of a case like *State v. Lyle*, 854 N.W.2d 378 (Iowa 2014) (holding all mandatory minimum sentences of imprisonment for juvenile offenders violate article I, section 17 of the Iowa Constitution), did not have a right to counsel at the resentencing.

We are aware that the motion to correct an illegal sentence has the potential to be abused. There are tools to address such abuse. To begin with, a motion challenging a defendant's underlying conviction is *not* a motion to correct an illegal sentence. *State v. Bruegger*, 773 N.W.2d 862, 871 (Iowa 2009). Additionally, "a defective sentencing procedure does not constitute an illegal sentence . . . ." *Tindell v. State*, 629 N.W.2d 357, 360 (Iowa 2001) (emphasis omitted). In those events, rule 2.28(1) does not require appointment of counsel because the motion is not a rule 2.28(1) motion.

Furthermore, a motion to correct an illegal sentence may be frivolous, for example, if it claims that a routine sentence was cruel and unusual or that two convictions should have merged when it is abundantly clear they do not. In that event, counsel should be appointed, but may ask to withdraw employing a procedure similar to that authorized by rule 6.1005 for frivolous appeals. *See* Iowa R. App. P. 6.1005.

Because we have concluded that rule 2.28(1) affords a right to counsel on a motion to correct an illegal sentence, we need not address Jefferson's arguments that such a right is mandated by the Sixth and Fourteenth Amendments to the United States Constitution or article I, sections 9 and 10 of the Iowa Constitution. *See, e.g., State v. Iowa Dist. Ct.,* 843 N.W.2d 76, 85 (Iowa 2014) ("The doctrine of constitutional avoidance suggests the proper course in the construction of a statute may be to steer clear of 'constitutional shoals' when possible.").

**B. The Constitutionality of Jefferson's Sentence.** Jefferson asks us to find that his lifetime special sentence under Iowa Code section 903B.1 violates the Cruel and Unusual Punishment Clauses of the State and Federal Constitutions, arguing the sentence is grossly disproportionate to his offense. Under Iowa Code section 903B.1, "[a] person convicted of a class 'C' felony or greater offense under chapter 709," including the offense Jefferson pled guilty to, is subject "to a special sentence committing the person into the custody of the director of the Iowa department of corrections for the rest of the person's life, with eligibility for parole as provided in chapter 906." Iowa Code § 903B.1 (2007). This special sentence commences "upon completion of the sentence imposed under any applicable criminal sentencing provisions for the underlying criminal offense and the person shall begin the sentence under supervision as if on parole." *Id.* At that point, the person serving the special sentence is placed on the corrections continuum outlined in chapter 901B and subject to the same procedures as other parole and work release violations in ordinary sentencing. *Id.* Any revocation of release due to parole violations "shall not be for a period greater than two years upon any first revocation, and five years upon any second or subsequent revocation." *Id.* Finally, pursuant to Iowa Code section

906.15, a person convicted of a crime against a child under section 709.4, who is serving a special sentence pursuant to section 903B.1, is eligible for early release from parole once "the person's term of parole equals the period of imprisonment specified in the person's sentence, less all time served in confinement." *Id.* § 906.15. Jefferson claims his "lack of prior criminal history, young age, and relatively lower culpability[,] comparing the offense of statutory rape versus the other possible felonies that would give rise to a 903B.1 lifetime special sentence[,]" create an inference that his sentence is grossly disproportionate to his underlying crime.

As described above, Jefferson is raising a claim that his sentence is illegal. Accordingly, he was entitled to the appointment of counsel in the district court. We sustain the writ and remand for the district court to appoint counsel and consider the merits of Jefferson's claims.

## IV. Conclusion.

For the aforementioned reasons, we sustain the petition for writ of certiorari and remand for further proceedings.

**DECISION OF COURT OF APPEALS VACATED; WRIT SUSTAINED.**

All justices concur except McDonald, J., who takes no part.